Department of Health, are you not going to be 15 minutes presiding, Mr. Snyder, for the House? Good morning. May it please the court, counsel, I'm Sheryl Snyder for the appellant. I'd like to reserve three minutes for rebuttal, please. I think the beginning point in interpreting the buy-sell agreement is to reflect upon the purpose served by the buy-sell agreement, which is that the surviving shareholders may buy the shares of the deceased shareholder, thereby precluding them from being inherited by the heirs and sold to third parties at fair market value. In consideration for the obligation to sell those shares to the surviving shareholders, the buy-sell agreement sets forth the consideration to be paid to the estate. And in this particular case, the parties chose not to have a fair market value arbitrated by an arbitrator, which often happens in these buy-sell agreements, but rather to have double book value, plus the right to remain as a shareholder of the corporation, and therefore to participate in the future growth of the corporation for a period of time. We all agree in this case that that period of time is six years. The question is, which six years compose the six-year period? So did this fight happen? Because I take it this would not have happened if, hypothetically, from 2005, just take it to 2015 or 16, the earnings revenue were the exact same every year. In other words, this dispute happened, I take it, because a later year was particularly good or an earlier year was particularly bad? Is that the only reason we have this dispute? Am I right in thinking you would not be here if the earnings and revenue were exactly the same from 2005 to 2015? Because, in other words, then it would be the same under either approach. No, Your Honor. The issue is whether we get earnings for 2013 or only stop at earnings for 2012. So what is the issue? I got that. My point is, imagine counterfactually, not what happened to the earnings of this company, just hypothetically imagine this company had the exact same earnings, exact same book value, nothing changed for whatever reason from 2005 to 2015. So that is going beyond the potential years at issue. My assumption is you would not be here, right? This is all about whether to count the last year or not. Presumably that is because it was either a very good or a very bad year. No, Your Honor. It is not a matter of whether it is a good or bad year. It is a matter of whether we get the earnings for that year or zero. Their argument is that the six-year period concluded with 2012. And started what? 2007, the year preceding death. So what is at issue is the earnings for one more year. Now, it is true that the earnings are on the uptick. That, of course, is the reason why these parties chose for their estates to participate over a period of time rather than having an appraiser set a fair market value at the date of death because the trend would hopefully be up and therefore the heirs would participate in an uptick. But the issue in the case is whether the six-year period stops with 2012 or includes 2013. So the earnings for one year is what is at stake. Whether there is an extra year. Correct. And paragraph 5.4 refers to the time period as the year of death and the five years thereafter. We say what that means is the estate has the right to participate in the earnings earned in the year of death and the five years thereafter. They say no. What it really means is the estate gets to participate in the earnings in the year preceding death and the year of death and the four years thereafter. And the way they get to that interpretation, which the district judge bought, is the inclusion of the reference to the IRS form K-1 in that sentence because they say a K-1 reports earnings for the prior year. So what this really means is you go back a step each year. So the K- Let's go back to Judge Sutton's. Your opponent suggests, I think I just heard you say, that the years of payout start a year earlier than your proposition would ordain. Yes. So we're talking about the same number of years. The question is which six years. That's correct, Your Honor. So it's just a different six years. You're both talking about six years. They're talking about a six-year period that starts a year earlier than your proposition would hold. Yes? That's correct, and that's why I say the issue is whether we get the earnings for 2013 or not. And under their interpretation, here I think is- But wait. Please continue that after you recognize that Judge Sutton's implication is exactly correct then. If every year is identical to every other year, it doesn't matter which six years. If it's a six years that begins in 2006 or a six years that begins in 2007, it doesn't matter. The book value is the same. The profits are the same. The payout is the same. It's just a different six years. That's all it is. No, Your Honor. No? That's not all it is. Why? Explain it. I'll be glad to. Under their interpretation- Everybody else probably understands this. Go ahead. Under their interpretation, the six year period includes earnings for the year preceding the year of death. Yes. 07. Right. Well, the earnings for the year preceding the year of death were already earned by Mr. Howard when he was alive. The form K-1, in every case like this, the earnings will have been- It's an illusory first year as well. Exactly. We already own that. We already own the year preceding the year of death. It was earned by Mr. Howard. The K-1 was issued to Mr. Howard. The estate filed a 1040 in Mr. Howard's name. He had already earned those earnings. So to say that the parties here intended that the six year payout period would include the year preceding the year of death is an illusion. Maybe the briefing just was not clear on that point. That may be. You may proceed. But I do think that's the key reason why giving this talismanic significance to the form K-1 is not a reasonable interpretation of the agreement because it requires you to say that the first year of the six year payout is the year preceding the year of death and that's already been earned by the shareholder before he died. So if his heirs are going to get the year of death and the five years thereafter, that has to mean the earnings for the year of death and the earnings for the five years thereafter. And the reference to the K-1 is simply a reference to quantify the earnings that are paid out. Does it make any difference when during the particular year of death the death occurs? January 2nd as opposed to December 30th? It does not make a difference to the payout, Your Honor. It makes a difference in the calculation of the book value. The agreement was amended in 2004 to provide that if the death is in the first six months of the year, you use the year before it for the book value. And if the death is in the second part of the six years, you use the year of the calculation. Am I right in thinking the problem you identified that applies in this case would not apply if you die in the last six months of the year? No, Your Honor, because the... If you die in the last six months of 08, so October 08 you die, then you go forward. So 08 is your first year, not 07 under their theory, right? No. No? Okay. Under there, you have to separate the calculation of book value from the five-year payout. The first half of the year or the second half of the year applies only to which year you use to calculate the book value. But this relates to another very important part of the agreement, and that is when the amendment was done in 2004, it was changed to exclude from the calculation of book value the earnings in the year for which book value is being determined. But then in order to make clear that that didn't mean you didn't get those earnings, they were just not used to calculate book value, you still get them, paragraph 4.1 sub 3 was added, and that paragraph very clearly refers to that a state is entitled to the earnings for the year preceding death plus the payout under section 5.4, very clearly denoting that the year preceding the year of death is not included in the time period set forth in 5.4. If you read those two together, and it's also consistent with paragraph 5.2, which sets the date for the closing, it refers to the first day after the end of the fifth fiscal year following the year of death. And they argue that you have to include the year of death in that. Well, clearly, the fifth fiscal year refers to five full fiscal years, consistently with 5.4, which refers to the year of death and the five years thereafter. Those two paragraphs read together make clear that the closing date in this case would have been January 1, 2014. And they're all using calendar year for fiscal year? Yes, Your Honor. So I think if you look at the purpose of the agreement, the context of the agreement, the purpose being to fairly pay out the heirs of the estate, it's simply not... Can I ask you a question? With this company and maybe companies in general, you were making the point that it's illusory to say you're getting the 07 earnings because you would have already gotten that. But aren't there sometimes undistributed earnings from that year so that that's not quite accurate? I'm not sure. You said pretty forcefully it's an illusion, and I'm asking you whether that's completely true. I'm not sure I'm following the question, Your Honor. Well, I thought the point you were making is if you count 07 as part of the counting here, that's an illusion because this individual already had obtained those earnings. They would have been reflected in the whatever it is, K-1. And so to count that year was, in effect, double counting. And I'm just saying isn't it sometimes the case that at the end of the year, so the end of the calendar year 07, if the K-1 reflected 500,000, there may have been some undistributed earnings from that year that companies sometimes distribute over time for cash flow purposes and other purposes. Is that not possible? It's certainly possible, Your Honor, but two things. One, I don't think that... So it's not an illusion? No, Your Honor. I don't think that impacts my point at all that to count the year preceding the year of death is illusory in the sense that those earnings were already earned without regard to when they're distributed. The K-1 that is given to an S Corporation shareholder, he's taxed on all of the earnings whether they're distributed or not. And that's the key point of what the reference to the K-1 in Section 5.4 means. It requires the company to distribute all of the earnings reflected on the K-1, meaning during the six-year payout period the company cannot retain earnings. It has to pay the estate the full amount of money shown on the K-1 because, one, it's the fair thing to do to make sure they get what they're entitled to. So I think the key point of retained earnings here is the reason for the mention of the K-1 in Section 5.4. It's to define the term all earnings, all earnings reflected on the K-1. As reflected. As reflected, so that there's an obligation to distribute those earnings to the estate during the year of death and the five years thereafter and not retain earnings during that time period. So I don't think that concept impacts my point that to say this six-year period includes the year preceding death would say the six-year period includes earnings that the shareholder has already earned, that the estate is therefore already entitled to. It doesn't make common sense. It doesn't make business sense to say we stuck this reference to the K-1 in the middle of this sentence for the sole purpose of making it one year less than it otherwise would be. That just doesn't make common sense. Unless it was a company that has lots of undistributed earnings. I think factually, Your Honor, this would be out... The fact that you're paying taxes on it makes this point, it seems even stronger. They're paying taxes on hypothetically a million and they're only getting $500,000. Surely you would want the rest. Yes. You would refer to 07 as the time for the rest. No? Your Honor, I... There's a million. They've distributed $500,000 at the end of 07. The K-1 reflects a million. Don't they want the remaining $500,000? And that could be what this is referring to. I mean, I have no idea what I'm talking about. I'm just looking to you to try to figure this out. Okay. If you want... There can be undistributed earnings. I agree with you that there could be undistributed earnings. There's no evidence in this record that there were undistributed earnings. The... Look, this is a three-man partnership set up as an S-corporation. The earnings are basically paid out in two payments during the course of the year and they're paid out. That's the way they operate as a business practice. I don't think anyone would have a concern that you need to... This problem doesn't make sense in the context of this company. Is that the point you're making? I think the point... I think you're constructing a hypothetical that doesn't apply to this particular case. Okay. And it's a hypothetical that sort of begs the real question here, and that is, what was the meeting of the minds as to what the six-year payout period was? What's the common sense interpretation of Section 5.4? When it says the year of death and the five years thereafter, does it mean what it said? Or does the dropping of the K-1 in the middle of that sentence say, we don't really mean what we said when we said the year of death and the five years thereafter. We really mean the year of death and the four years thereafter because this reference to the K-1 changes that by rolling everything back a year. That doesn't make common sense from a businessman's standpoint that my heirs are going to get the earnings for the year of death and the five years thereafter. Okay. Your time has expired. Maybe the best thing to do is hear from the company's lawyer, and then you'll have your rebuttal. May it please the Court. Mr. Snyder. John David Dyke, representing the defendants, Your Honor, the appellees, Your Honor. Actually, Judge Sutton, you are exactly right. Appellants began by saying the inclusion of the right to earnings for 07 in the provision which sets forth the buyout terms or the redemption terms was illusory so that it shouldn't be taken into account in interpreting that provision, and they should get another year at the end. Actually, you're exactly right. Section 5.4, by including 07 earnings, makes sure that earnings that have been earned are actually distributed as a dividend after the death of the shareholder. It keeps the two remaining shareholders from not distributing the earnings for that 07 year. So it is actually protection for the remaining shareholders' estate and makes perfect sense. And you would focus, I think, on the inclusion of the adjective undistributed, focused on the year preceding. And it's all earnings both distributed. All earnings as redistributed. Whether they are to be distributed in 2010, let's say, or retained as to the other partners, they're going to be earned and distributed to the estate. Is that what you're thinking? That is the effect of this provision. Now, the position of the appellees, as is well and succinctly embodied in the district court's opinion, rests on a few key points, one of which is the district court's opinion reads the provision 5.4 as it is actually written. And as it is actually written, and it's on page 3 of our brief, it refers to then all earnings, if there's been an election to do a buyout, then all earnings of the corporation as reflected by the K-1 issued by the corporation during the year of death and the five years thereafter shall be paid to the estate. The K-1 comes out the next year for the preceding year's earnings. So as reflected by the K-1 issued by the corporation during the year of death means, in this case, the 08 K-1 reflecting the 07 earnings. So that includes in part of the consideration for the redemption those 07 earnings which could be undistributed. It gives them those earnings. It sounds like it's true in this case that it had been, the 07 earnings had been distributed. That is not in the record. The earnings had been earned and a K-1 had been issued. But I believe what's in the record says that the corporation would customarily distribute in April and October of each year. Mr. Howard died in March of 08. So those 07 earnings. Twice a year, is that what you just said? In the following year. They would distribute 07 earnings typically in two different monthly installments in the following year. Mr. Howard died in March. If the first distribution is not until April after he dies, absent this provision, there's nothing assuring that his estate gets those earnings at all. So is this a fight about good year, bad year? No. It's not a fight against good year, bad year. Just to make sure I'm understanding this. This isn't about whether 07 was a good year or 13 was a good year. No. In fact, when the case commenced, no one knew what 13 was going to be. Good year, bad year. But there's going to be something there. It's just which years are to be there. And the district court's opinion. Economically, I just cannot figure this case out. You're making it sound like the state's getting the same either way. It's a six-year period either way. 07's not an illusion. You hadn't gotten a dime of that yet. So I still don't understand. You guys aren't fighting about the meaning of this agreement for the sake of fighting about the meaning of this agreement, right? The issue. Someone is getting hurt or benefited economically, and I can't figure that out. That's correct. And it is going to be whether the obligation to pay them the estate for the shares or for the earnings terminates with the earnings of 12 or includes 13. Does it go from 7 through 12 or, as they would suggest, 7 through 13? Their interpretation actually stretches it out another year because they say, oh, we get 07 just because they were already earned, and we should get the 13 earnings too because of how we interpret Section 5.4. So that's the real argument is do they get 13 or not? The district court, without their provision in 4.1, without the provision referring to undistributed earnings, with a death occurring in March of 08, I think the company's position would be that the estate would not receive earnings, whether distributed or undistributed. As to the other partners, the estate would simply not receive the earnings at all from 2007. That is not the position of the corporation. The position of the corporation is that Section 5.4 in the original agreement says that what they get when they exercise the option, and we should just walk through it, it said they've exercised the option, then all earnings of the corporation as reflected by the K-1 issued by the corporation during the year of the death. The K-1 issued by the corporation during the year of death, which was 08, is the K-1 reflecting 07 earnings. So that's one thing they get. They get the 07 earnings because those earnings were shown on the K-1 issued during the year of death, 08. And were it not for that provision, would it be the company's position that those 2007 earnings would simply have been distributed to the surviving partners, with no payout to the estate? Well, Your Honor, the company doesn't have just a general all-purposes position or policy on that. The requirement that those earnings go to the estate is contained in Section 5.4 because Section 5.4 says during all earnings of the corporation as reflected by the K-1 issued by the corporation during the year of death. That's the K-1 in 08 that reflects the 07 earnings. So that's where they get the 07 earnings. Otherwise, the corporation could make policy on distribution of earnings according to the best interests of the corporation, presumably. And simply seize the earnings of the deceased? Which is all the more reason why they... Do you think that would be legitimate under prevailing law? I wouldn't go with the terminology of seize. They could retain, but that's why all three of the shareholders agreed to put this provision in the by-sale, which makes sure that that doesn't happen. It sounds like you were making progress. I couldn't follow it, but it sounded like you were making progress. If I may, Your Honor, another supporting... I'm trying to imagine the situation that would prevail in the absence of that provision if that provision had simply been eliminated or if there were not this by-sale agreement at all. Imagine the extreme situation. This by-sale agreement didn't exist. He dies in March of 08. He was alive and kicking and running the company and doing wonderful things on all of 07. The company made a lot of money in 07. His estate gets none of it. Is that the implication of the law otherwise? It is. Right. Right. I think that is a theoretical possibility, and I think the existence of that theoretical possibility is the reason why Section 5.4 was included in the by-sale. It strikes me there's something wrong with that. He makes the point that you get your K-1. You get it even before April 15th. You get your K-1. Just hang in there. So I'm sure you have an answer. I just want you to answer this question. So you get your K-1 early in 08. The K-1 makes you responsible as an S Corp shareholder on all of these earnings. They pay this, and you're telling me it's not a given that they get it? I don't think it's a given under the principles of corporate law. Now you're losing me. The K-1 makes you liable for the taxes on the earnings, but that does not compel a distribution of all earnings necessarily. In some years, there can be tax liability the corporation might not be able to distribute. The thing I'm now starting to get about his point is this is supposed to be above and beyond what you – that's the whole point here. You're getting – this is the by-sale agreement, and you're not going to go – we all agree you wouldn't go back and say, oh, we're going to let you keep what you got in 04, right? Just stop. Don't say anything. I'm right. You would never have an agreement that says, oh, you get to keep what you earned and pay taxes on in 04. You have to agree with me on that. Yes. Several years before the guy dies, of course he gets to keep that money, right? If the money has been distributed to him, he gets to keep it, Your Honor. I'm this time not following your line of reasoning. That's of course going to be – so all I'm saying is you think of what this means under the normal situation. The normal situation is you've paid taxes on it. If you pay taxes on something, it's coming to you. So we assume that – we don't assume that is part of the consideration for the by-sale. But that does not make it unreasonable to confirm in the by-sale. There's no definite right amount of consideration that you're going to get. Maybe the by-sale should have said you get to keep everything else that you were taxed on for the prior 10 years. Well, no, but the by-sale is quite reasonable in saying the first year for which you get earnings is going to be the year preceding death because otherwise there's not a legal requirement for distribution of those earnings. I think that's the key to the answer to my question earlier and probably is the key to what Judge Sutton is concerned – I understand him to be concerned about, that the principles of corporate law, especially S-corporation law, is in fact the company can elect to lay off the tax liability but keep the money and reinvest it, buy something of that sort so that these K-1s represent essentially phantom income and that can go on for a long, long time. Precisely. There's nothing wrong with that in corporate law. That's the essence of your point, I think. Precisely. Okay. Was this company doing that? Not to my knowledge. It's not in the record, but I have no knowledge that they were. But that is why it is reasonable to include an express grant of a right to the 07 year preceding death earnings as part of the consideration. Then the issue just becomes, okay, and how much more consideration do you want to include? And that's where we get to the issue here, which is – But why, if you can have all this phantom stuff and this is what they were guarding against, why just one year? Why not 06, 05? Make it clear all of this stuff is part of it. Any undistributed earnings that might retain from – Exactly. Indeed, why not? The only thing I can proffer there – That's not what they meant. The why not to me is because that's not what they were getting at. No, it may be that they just based it on the practice that had occurred or that when they did the agreement all earnings had been distributed previously or they just concluded that one year was appropriate as part of the consideration. Then the question just becomes, how many more years? If I may, while I still have a moment, one point that needs to be made is Section 5.2, when this was supposed to close. Mr. Snyder said that Section 5.2 said five full fiscal years after the year of death. It doesn't. It says that the closing takes place the first day after the end of the fifth fiscal year following the date of death of the shareholder. The date of death was in March 08. That makes the end of the first fiscal year following the date of death. Not the first full fiscal year, the fiscal year following death plus the first day after the end of the fifth fiscal year following the date of death of the shareholder, which is 08 is the first fiscal year, 9, 10, 11, 12. It takes you out there, which is the same place that Section 5.4 takes you. The purpose of that was as long as they're still a shareholder, before the redemption has become, they're going to stay a shareholder and have the right to the redemption at the same time their shareholder status ends. In other words, they're a shareholder through 2012, so they're entitled to get earnings through 2012. The two provisions sync up perfectly. And under their interpretation, when they're supposed to get earnings for another year of 13, they will already have ceased to be a shareholder at the end of 12. So their interpretation creates an inconsistency between the period of time for which they remain a shareholder and the period of time for which they're entitled to get earnings. And that inconsistency just doesn't make sense. Okay, thank you. Thank you, Your Honor. May it please the Court, in all of the briefs that have been filed in this case, they've never before argued that the reason for including the K-1 was to make sure that the earnings of the year preceding death were distributed. I heard that for the first time at the podium. We're just trying to make sense out of it. I mean, go ahead. Is it a bad argument, or did they come upon a really good argument at the end of the day? The purpose for including the K-1 is not to ensure that the earnings for the year preceding death are distributed. There are three shareholders in this company. If you don't distribute the earnings to the estate, you also don't distribute the earnings to the other two shareholders, and it's their livelihood. So the notion that they're going to withhold all of the earnings for the year preceding death is not within the contemplation of these parties. You're making a – that's a practical argument. That's based upon your understanding of the experience of these particular shareholders with respect to the principle of law that opposing counsel was addressing, agreeing with my proposition. Do you also agree that as a matter of corporate law, S corporations especially, it is imaginable that an S corp could elect to retain and to not distribute some or all of its earnings for a given year? It certainly is, Your Honor, and in fact we argue that the reason for the inclusion of the K-1 is to make sure that during the five-year payout the earnings are distributed, and that's the point I was getting to, which is are you looking at the inclusion of the K-1 in 5.4 as backward looking to make sure that the earnings in the year preceding death are distributed, or is it forward looking to make sure that it's distributed during the five years? Because what we're trying to interpret here is the phrase during the year of the death and the five years thereafter. What does that mean? Does that mean the earnings in the year of death and the five years thereafter? Under their construct it means the earnings of the year preceding death and the year of death and the four years thereafter. Section 4.1 speaks of the undistributed earnings for the year preceding the date of death. It modifies earnings to identify undistributed. Your Honor, Section 4.1 is the book value provision, not the payout provision. The payout provision doesn't have that distinction in it. I take your point. Thank you. I take your point. And the important part of Section 4.1 is the addition in 2004 when they excluded earnings in the year of calculating book value and then provided in 4.1 subsection 3 that the state is entitled to the earnings for the year preceding death and the period of 5.4, making very clear that the period of 5.4. And the other thing that was added... What's your response to his 5.2 point about this, your interpretation creating an oddity about whether you're still a shareholder and entitled to distributions? I don't think it creates an oddity at all, Your Honor, when read in context with the other provisions. What he's referring to is this, the closing shall take place on the first calendar day after the end of the fifth fiscal year following the date of death of a shareholder. Now the question is, does that mean four and a half years or does it mean five years? It says the fifth fiscal year. A fiscal year is an entire year. It doesn't say four and part of the fifth. It says the fifth fiscal year. If you read that in conjunction with the addition to 5.4 that was done in 2004, the one sentence at the end, and 5.4 itself, it's very clear that the payout period is a five-year period after the year of death. And that's completely consistent with 5.2 by reading fifth fiscal year as being five full years, which is also what 5.4 provides. So I don't think it creates an anomaly at all. The last thing I would say to the Court is the sentence that was added to 5.4 in the 2004 amendment is referred to as a supplement. If you take 5.4 and don't view that supplement as sort of a separate paragraph but stick it at the end grammatically like it's intended to be and then read 5.4 including that sentence, then 5.4 concludes with the words, the provisions of this paragraph providing for payment of dividends for the five years following the year of death. That's part of 5.4, the five years following the year of death. It couldn't be more clear that what's intended here is the year of death and the five years thereafter, not the year preceding death, the year of death, and the four years thereafter. Thank you. Thank you, Mr. Snyder and Mr. Dyke. We certainly appreciate your arguments today. The case will be submitted.